**FILED**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2018 AUG 28  AM 10: 19

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA FLORIDA

| | |
|---|---|
| LYNDA MACEDA, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) |
| Plaintiff, | ) CASE NO. 5:18-cv-452-Oc-30PRL ) |
| v. | ) CLASS ACTION ) |
| CHARTER COMMUNICATIONS, INC., a Delaware corporation; and BRIGHT HOUSE NETWORKS, LLC, a Delaware limited liability company, d/b/a "SPECTRUM", | ) JURY TRIAL DEMANDED ) ) ) ) ) |
| Defendants | ) |

## COMPLAINT

1. Plaintiff Lynda Maceda brings this action against Defendants Charter Communications, Inc. and Bright House Networks, LLC, d/b/a "Spectrum," to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. At various times, and on numerous instances within the four (4) year period prior to the filing of this complaint, Defendants sent, or caused to be sent unsolicited calls to Plaintiff's cellular telephone, in violation of the TCPA.

### JURISDICTION AND VENUE

2. This Court has federal question jurisdiction because this case arises out of violation of federal law. 47 U.S.C. § 227, *et seq. See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3. This Court has personal jurisdiction over the Defendants because they conduct business in this District, place automatically dialed calls into this District, and

maintain continuing and significant business contacts within this District sufficient to subject it to personal jurisdiction.

4. Venue is proper in this District because a substantial portion of the events complained of occurred here.

## PARTIES

5. Plaintiff Lynda Maceda ("Plaintiff") is a natural person who, at all times relevant to this action, was and is a resident of Sumter County, Florida.

6. Defendant Charter Communications, Inc. ("Charter") is a Delaware corporation whose principal office is located at 400 Atlantic Street, Stamford, CT 06901, and whose registered agent for service of process in the state of Florida is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

7. Defendant Bright House Networks, LLC ("Spectrum") is a Delaware limited liability company whose principal office is located at 12405 Powerscourt Drive, St. Louis, MO 63131, and whose registered agent for service of process in the state of Florida is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

8. Bright House Networks, LLC is a wholly-owned subsidiary of Charter Communications, Inc.

9. Defendants Charter and Spectrum are cumulatively referred to herein as "Defendants."

## FACTUAL ALLEGATIONS

10. At all times relevant herein, Plaintiff, along with her husband, were and are the registered subscribers, with exclusive dominion and control of the cellular telephone

number ending in 9500— the number to which the violative calls alleged herein were placed.

11. At all times relevant herein, including at least the 31 days prior to receipt of the first alleged text message, Plaintiff's cellular telephone number was registered with the national do-not-call registry of persons who do not wish to receive telephone solicitations.

12. On June 22, 2018 at 12:34 pm, Plaintiff received a call to her cellular telephone from the number (321) 362-7761.

13. Plaintiff answered the call, and before a live agent came to the phone, Plaintiff's recollection was that she met with a pause, or a "click" or "pop" sound— the hallmarks of an automatically dialed call. In any event, she was not immediately greeted by a live caller.

14. When a live agent came to the phone, he identified himself as "Michael Owen" and stated he was calling from Spectrum TV and Internet.

15. During the call, Mr. Owen offered Plaintiff a "no contract" internet, TV, and phone service for $108.95 per month.

16. Plaintiff did not accept the offer. However, in order to learn more about the true identity of the unsolicited caller, and in an attempt to confirm with certainty their identity, Plaintiff requested additional information in the form of a "call back."

17. At around 6:00 pm on June 22, 2018, Plaintiff received another call from the 7761 number which she was not available to answer and which was logged as a missed call.

18. On June 26, 2018, at 12:51 pm, Plaintiff received another telephone call to

her cellular phone, again from the 7761 number, again from Michael Owen of Spectrum, repeating the same sales script as the June 22, 2018, call as if Mr. Owen had no recollection of speaking with Plaintiff days earlier.

19. Not unlike the first call, before a live agent came to the phone, Plaintiff's recollection was that she met with a pause, or a "click" or "pop" sound— the hallmarks of an automatically dialed call, after which Mr. Owen came on the line.

20. Again, Plaintiff did not accept the offer. Again, in order to learn more about the identity of the unsolicited caller, and in an attempt to confirm with certainly their identity, Plaintiff requested additional information in the form of a "call back."

21. At around 6:00 pm on June 26, 2018, Plaintiff received another call from the 7761 number which she was again not available to answer and which was logged as a missed call.

22. Plaintiff is neither a subscriber to nor client of Defendants' services, did not request to receive the complained of calls, nor did Plaintiff provide Defendants or their agents with prior express written consent to receive unsolicited telephone calls.

23. Defendants' calls were a nuisance which briefly deprived Plaintiff of the use of her phone, invaded her personal privacy, causing annoyance, and generally wasted her time.

## OVERVIEW OF THE TCPA

24. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy . . ." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("Robocalls"), finding:

> Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> * * *
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call ..., is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Id. § 2(10) and (12); *See also Mims v. Arrow Financial Services, Inc.*, 132 S.Ct. 740 (2012).

25. While imposing general restrictions on a wide set of telemarketing practices, the TCPA's strictest provisions apply to telemarketing by automatic telephone dialing system. See 47 U.S.C. § 227(b)(1).

26. The statutory definition of an automatic telephone dialing system (sometimes called "autodialer") is "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator to dial the numbers[,]" and has the capacity to dial such numbers. Id. § 227(a)(1). The term also extends to predictive dialers and equipment that has the capacity to dial numbers without human intervention. *See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14093 (2003).

27. With the limited exception of calls made for emergency purposes, the TCPA bans all calls to cell phones placed through an autodialer, regardless of whether they solicit the sale of goods or services, unless the recipient of the call provides "prior express consent" to receive the calls. 47 U.S.C. § 227(b); 47 C.F.R. § 64.1200(a)(1).

28. "Prior express consent" exists where a consumer has (a) clearly stated that the telemarketer may call, and (b) clearly expressed an understanding that the telemarketer's subsequent call will be made for the purpose of encouraging the purchase of goods or services. *See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 F.C.C.R. 12391, 12396, para. 11 (1995).

29. Under FCC regulations, telemarketing calls require prior express *written* consent. 47 C.F.R. § 64.1200(a)(2).

30. "Prior express written consent" means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(8).

31. The FCC has issued rulings and clarified that in order to obtain an individual's consent, a clear, unambiguous, and conspicuous written disclosure must be provided to the individual. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278 Report and Order, FCC 12-21, ¶¶ 26, 32-33 (February 15, 2012).

32. Furthermore, oral consent is not sufficient under the TCPA to make calls to numbers on the Do Not Call Registry. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2)(ii).

## CLASS ALLEGATIONS

33. Plaintiff brings this action on behalf of two (2) nationwide classes of similarly situated individuals, the first of which consists of the "*Autodialer Class*" The Autodialer Class consists of:

> All persons in the United States to whom, within the four years immediately preceding the filing of this Complaint, Defendants or some person acting on Defendants' behalf made one or more calls to their cellular telephone, without prior written consent, advertising Defendants' goods and/or services, through the use of the same or materially similar telephone dialing equipment as that which was used to send the calls at issue to the Plaintiff.

34. Plaintiff is a member of the Autodialer Class.

35. The second class is the "*Do Not Call Class*." The Do Not Call Class consists of:

> All persons in the United States to whom, within the four years immediately preceding the filing of this Complaint, Defendants or some person acting on Defendants' behalf placed more than one call to their telephone number advertising Defendants' goods and/or services, while the subject telephone number was registered on the National Do-Not-Call list for more than 31 days.

36. Plaintiff is a member of the Do Not Call Class.

37. Defendants and their employees or agents, Plaintiff's attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress are excluded from the Classes.

38. The Classes are so numerous and geographically widespread that joinder is impracticable. Upon information and belief, as well as common experience of the size of automated dialing campaigns, there are easily more than one thousand persons in each Class.

39. Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting any individual member of the Classes, including Plaintiff. Such questions common to the Classes include, but are not limited to:

    a. Whether the calls that are the subject of this lawsuit were made using an "automatic telephone dialing system" as proscribed by the TCPA and applicable FCC regulations and orders;

    b. Whether the calls that are the subject of this lawsuit were made to individuals whose telephone number was registered on the national do not call registry.

    c. Whether the violation was negligent or willful.

40. Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has no interests that might conflict with the interests of the Class. Plaintiff is interested in pursuing her claims vigorously and has retained counsel competent and experienced in class and complex litigation.

41. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single

forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

42. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

43. Defendants have acted on grounds generally applicable to the Classes, thereby making relief appropriate with respect to the Classes as a whole.

44. Prosecution of separate actions by individual members of the Classes, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct.

45. The identity of the Class Members is likely readily identifiable from Defendant's records, or the records of other person(s) involved with making the calls.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

**COUNT I**
**Violation of 47 U.S.C. § 227(b) and the Regulations Promulgated Thereunder**
**(On Behalf of Plaintiff and the Autodialer Class)**

47. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

48. It is a violation of the TCPA, 47 U.S.C. §227(b) to call a person's cellular telephone using an automatic telephone dialing system. The TCPA also specifically prohibits the use of an unsolicited telephone calls to advertise the sale of goods and services. 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200.

49. Defendants, or some person on their behalf, sent one or more telephone calls to Plaintiff and others' cellular telephones, using an automatic telephone dialing system and/or an artificial or prerecorded voice without Plaintiff's or the class members' express written consent.

50. The Defendants' telephone calls were negligent placed, or alternatively, willfully placed despite prior knowledge of the TCPA.

***WHEREFORE***, Plaintiff requests that the Court enter judgment in favor of herself and the class and against Defendants that provides the following relief:

a. Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful;

b. A permanent injunction prohibiting Defendants from violating the TCPA in the future through calling cell phones using an automatic telephone dialing system and/or a prerecorded voice message;

c. A declaration that Defendants used an automatic telephone dialing system and artificial or prerecorded voice, and violated the TCPA in using such for calls to the cell phones of plaintiff and the class; and

d. Any other relief the Court finds just and proper.

**COUNT II**
**Violation of 47 U.S.C. § 227(c) and the Regulations Promulgated Thereunder**
**(On Behalf of Plaintiff and the Do Not Call Class)**

51. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

52. It is a violation of the TCPA, 47 U.S.C. §227(c) to call a person who has registered his or her telephone number on the national do-not-call registry of persons who

do not wish to receive telephone solicitations. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

53. Section 64.1200(e) states, "The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991." Therefore, § 64.1200(c)(2) applies to cellular telephones as well as residential landlines.

54. Defendants, or some person on their behalf, made one or more marketing telephone calls to Plaintiff and others' telephone numbers when said numbers had been registered on the national do-not-call registry for more than 31 days.

55. Such telephone calls were sent without Plaintiff's or the class members' express written consent.

56. The Defendant's telephone calls were negligent placed, or alternatively, willfully placed despite prior knowledge of the TCPA,

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of herself and the class and against Defendants that provides the following relief.

    a. Statutory damages of $500 per violation;

    b. A permanent injunction prohibiting Defendants from violating the TCPA in the future through calling cell phones registered with the national do-not-call registry;

    c.    A declaration that Defendants made calls to numbers registered with the national do-not-call registry, and violated the TCPA in making such calls to the cell phones of Plaintiff and the class; and

    d.    Any other relief the Court finds just and proper.

## JURY DEMAND

57. Plaintiff demands trial by jury.

Dated: August 16, 2018.

                                    Respectfully submitted,

                                    *s/ Scott D. Owens*
                                    Scott D. Owens, Esq.
                                    SCOTT D. OWENS, P.A.
                                    3800 S. Ocean Dr., Ste. 235
                                    Hollywood, FL 33019
                                    Tel: 954-589-0588
                                    Fax: 954-337-0666
                                    scott@scottdowens.com